Nor-Cal Adjusters, aka Nor-Cal Insurance Adjusters, formerly Hobson Adjusters, a corporation v. Commissioner.
Nor-Cal Adjusters v. Commissioner
Docket No. 5803-69.
United States Tax Court
T.C. Memo 1971-200; 1971 Tax Ct. Memo LEXIS 132; 30 T.C.M. (CCH) 837; T.C.M. (RIA) 71200; August 16, 1971, filed. Vernon K. Deming and Lee M. Galloway, for the petitioner. Nicholas G. Stucky, for the respondent. FORRESTER
Memorandum Findings of Fact and Opinion FORRESTER, Judge: Respondent has determined a deficiency in petitioner's corporate income tax for the fiscal year ended September 30, 1967, in the amount of $2,953. There are two issues for decision: (1) *134 whether bonuses paid to petitioner's officer-shareholders for the year in issue are deductible as ordinary and necessary business expenses under section162;[1] and (2) whether petitioner is entitled, under sections 162 and 274, to deductions for certain claimed gift and entertainment expenditures. Findings of Fact General Some of the facts have been stipulated. The stipulation and exhibits attached thereto are incorporated herein by this reference. 838 Nor-Cal Adjusters (hereinafter sometimes referred to as Nor-Cal or petitioner) is a corporation organized under the laws of the State of California. At the time the petition in this case was filed petitioner had its principal place of business in Sacramento, California. Petitioner kept its books and filed its Federal income tax returns on the basis of a fiscal year ending September 30. For the year in issue Nor-Cal filed its Federal income tax return with the district director of internal revenue, San Francisco, California. Issue 1. Bonuses Petitioner is in the insurance adjusting business, performing that function for approximately 40 insurance companies. Petitioner was incorporated on October 2, 1963, by *135 Joseph R. Hobson under the nonrecognition provisions of section 351. For 13 years prior to 1963 Hobson owned and operated an insurance adjusting firm as a sole proprietorship. Hobson's initial capital contribution to petitioner was worth $16,000. Immediately after incorporation petitioner was known as Hobson Adjusters and Hobson was the sole shareholder. Three adjusters employed by Hobson's sole proprietorship when it was incorporated later bought some of his stock. Two of them, Ray H. Wetterer and Whitney R. Wincapaw, each purchased 25 percent of petitioner's stock from Hobson in late 1963 for $4,500 apiece. Another, Gene Theison, purchased 15 percent of petitioner's stock from Hobson in April 1966, also for $4,500. Thus, at the beginning of the taxable year ended September 30, 1967, petitioner's stock was held as follows: Stock Ownership
Number
of
Percent-
Officer-Shareholder
Shares
age
Joseph R. Hobson, President
350
35%
Ray H. Wetterer, Vice-President
250
25%
Whitney Wincapaw, Secretary
250
25%
Gene Theison, Treasurer
150
15%
Hobson, Wetterer, Wincapaw, and Theison held the corporate offices of president, vice-president, secretary, *136 and treasurer, respectively, from the first year of petitioner's existence until near the end of the year in issue. These offices entailed a degree of administrative endeavor in addition to the officers' principal work as insurance adjusters. Sometime between July 30, 1967, and September 30, 1967, Nor-Cal redeemed the 35 percent of its stock held by Hobson. In exchange for his stock Hobson was to receive 35 percent of Nor-Cal's net profits for the five years commencing October 1, 1967, and terminating September 30, 1972. Net profits were defined by the purchase agreement as the net after-tax profits of the corporation, but adding thereto all bonuses and salaries to the officers and other adjusters in excess of 60 percent of fee billings. That would include executive bonuses, administrative salaries, and vacation bonuses. After Hobson's stock was redeemed and his employment terminated Wincapaw was elected president of petitioner. On its Federal income tax return for the year in issue petitioner deducted $70,315 as "compensation of officers." This amount was paid to the four officer-shareholders as follows: Officer-Shareholder
Salary
Bonuses
Total
Joseph R. Hobson
$16,056
$ 4,550
$20,606
Ray H. Wetterer
14,154
3,250
17,404
Whitney Wincapaw
12,986
3,250
16,236
Gene Theison 14,119
1,950
16,069
$57,315
$13,000
$70,315
*137 Respondent disallowed the deduction to the extent of the $13,000 in bonuses. The payments designated as salary in the above schedule were paid according to employment contracts between Nor-Cal and each officer. Each officer's salary was comprised of a sum certain in payment for the administrative duties required by his office and, in addition, 60 percent of his fee billings. Thus, the salary element can be broken down as follows: 839 Administrative
60% of Fee
Officer-Shareholder
[2] Salary
Billings
Total
Joseph R. Hobson
$1,680
$14,376
$16,056
Ray H. Wetterer
1,200
12,954
14,154
Whitney Wincapaw
1,200
11,786
12,986
Gene Theison 720
13,399
14,119
$4,800
$52,515
$57,315 Each officer also received a two-week paid vacation. The payments designated as bonuses, totaling $13,000 were paid at the times and in the amounts listed below: Officer-Shareholder
10-15-66
4-1-67
6-8-67
Total
Joseph R. Hobson
$1,750
$1,400
$1,400
$ 4,550
Ray H. Wetterer
1,250
1,000
1,000
3,250
Whitney Wincapaw
1,250
1,000
1,000
3,250
Gene Theison 750
600
600
1,950
$5,000
$4,000
$4,000
$13,000
*138 Bonuses had been paid to petitioner's officer-shareholders in every year of its existence prior to the year in question. Theison never received a bonus of the kind here in issue prior to April 1966, when he became a shareholder. However, he did receive an administrative salary prior to April 1966, for the administrative and public relations functions which he performed as treasurer of the corporation. His administrative salary remained roughly the same after he became a shareholder. Each of the bonus payments made by Nor-Cal to its four officers during the year in issue was exactly proportionate to the recipient's respective stockholding in the corporation. The administrative salaries were also exactly proportionate to the stockholdings of the officers, and were thus exactly proportionate to the bonus payments. The bonus payments clearly did not closely correspond to the amounts received by the officers as 60 percent of their fee billings. Petitioner has never declared or paid a dividend to any of its shareholders. In addition to the four officer-shareholders, Nor-Cal employed three other insurance adjusters during the year in issue: Gordon Sjol, Dean Cooper, and DeWayne Turner. *139 Sjol was employed throughout the year and Cooper and Turner were each employed for a part of the year. Sjol received 60 percent of his fee billings as his compensation. The record does not reveal precisely what percentage of fee billings was paid to Cooper and Turner. None of the three served any administrative or public relations function and, accordingly, none received an administrative salary. For the year in issue Cooper and Turner received no bonuses; Sjol received a bonus of $350 in the form of a twoweek paid vacation. The taxable year ended September 30, 1967, was an unusually busy year for Nor-Cal and its income increased substantially over the previous year. All of petitioner's employees employed during the peak periods worked harder than normal. The increases in workload and business were due to a large windstorm early in the year and to a continuation in the growth of the business. At the first meeting of petitioner's board of directors after incorporation a resolution was adopted instructing the officers to execute the necessary documents to qualify petitioner as a subchapter S corporation. See sections 1371, et seq., and corresponding Income Tax Regs. Petitioner was *140 not a subchapter S corporation for any of the years from its inception through the year in issue due to the failure of one of its shareholders to sign the necessary consent forms. In a conversation with internal revenue agent Donald Shell, Wincapaw stated that the loss of subchapter S status was not a matter of great concern. He felt that a comparable result would obtain by paying out all of petitioner's income in the form of deductible salaries and bonuses. [3]
*141 840 For the five taxable years from its incorporation through the year ended September 30, 1968, petitioner's tax forms reveal the following figures for gross income, taxable income, and taxes paid: Year
Gross
Taxable
Tax
Ended
Income
Income
Paid
9/30/64
$ 81,413.30
($1,286.29)
$ 0
9/30/65
86,798.93
49.80
10.96
9/30/66
106,316.00
7,057.00
1,553.00
9/30/67
140,571.00
215.00
47.00
9/30/68
96,605.00
141.00
33.00
A California insurance adjusting firm comparable to petitioner's is owned and operated as a sole proprietorship by George F. Hills, a man with 40 years of experience in the field. Hills has been the sole proprietor of his own firm for 16 years. The firm is now comprised of seven offices located in Oakland, Palo Alto, San Jose, Walnut Creek, Vallejo, and Napa, all in California. The home office is in Oakland, where Hills performs all of the administrative and managerial work himself and employs five other adjusters. Hills bills the time of his adjusters out at $12 an hour, and pays his adjusters at the rate of $6 or $6.50 an hour, or about 50-55 percent of billings. Hills has a manager at each of the offices other than *142 Oakland, who is paid an additional management salary of five percent (presumably of the respective office's billings). The manager of his San Francisco office is paid more than any of the other managers, receiving an additional salary which brings his total compensation to about $20,000. For 1970 the largest bonus paid by Hills' firm to any of his employees was $350. Issue 2. Entertainment and Gifts Respondent disallowed $421 out of a total of $5,997 which petitioner deducted as advertising and entertainment expenses for the year ended September 30, 1967. The amount in dispute consisted of the following separate items: Lee Galloway
Liquor
$ 88.20
Wincapaw
Drinks for Sacramento agents convention
25.00
Limelight Bar
Liquor
73.05
Lee Galloway
Liquor
131.50
Wincapaw
Liquor, golf expenses
80.29
Walker
Liquor 22.78 $420.82 Petitioner bought liquor and nuts through Lee Galloway at a discount for use as Christmas gifts to customers. The only evidence offered concerning these gifts was a list of the customers showing the type of gift received by each. This list of 1966 Christmas gifts was prepared in late 1970 by Wincapaw strictly from memory. *143 No corroboration of Wincapaw's testimony was offered. Respondent disallowed a deduction for a $25 disbursement to Wincapaw in connection with an agents' convention in Sacramento. The only evidence giving any indication whatever of how this money was spent was testimony given by the respondent's agent from some notes he had made at the time of his audit. Petitioner introduced no evidence to substantiate the cost, the date, or the location of the convention, or to explain the business purpose of the convention. The Limelight Bar was located close to petitioner's offices. Two of petitioner's customers were located in the same building and petitioner's officers often entertained those customers at the Limelight Bar. Respondent disallowed a deduction for $73.05 in entertainment expenses incurred at the bar. The only documentation offered relating to this claimed deduction was a collection of bills from the Limelight Bar totaling $41.85, signed by an officer and paid by petitioner. These bills reflected the date, place, and amount of the purchases, all for drinks, and the officer who did the entertaining. Wincapaw identified the guests as customers, although no specific identification *144 of a guest was given for any of the bills. No corroboration was given of Wincapaw's testimony with respect to the business purpose and the business relationship involved. No testimony was offered by petitioner with respect to the ambiance at the Limelight Bar, i. e., whether the 841 surroundings were conducive to business discussions. Petitioner reimbursed its employees for expenses incurred in promotion of its business. Petitioner was able to purchase liquor and nuts at a discount from Galloway, and at the option of the employees, petitioner would use the liquor and nuts in lieu of cash to reimburse them for their business expenses. Respondent disallowed a deduction of $131.50 allegedly expended by petitioner to purchase liquor and nuts for use as reimbursement to its employees. With respect to this $131.50, petitioner was able to introduce documentary evidence only to the extent of $42.85, which consisted of an entry in Hobson's expense account record book for the month of December 1966. The total of the expenses to be reimbursed to him was reduced by $42.85, with a notation indicating that the reduction was due to Hobson's receipt of liquor and nuts from the company. *145 Wetterer testified that he had bought four to six bottles of liquor from petitioner in the same manner during December 1966. He stated that the cost of the liquor had been $4 to $4.10 per bottle. No documentation was offered to support this testimony. Respondent also disallowed a deduction for $80.29 expended by Wincapaw while attending a golf tournament at Santa Rosa, California, in March 1967. It was a claims association function and petitioner entertained two guests with whom it did a substantial amount of business. The guests were identified by name as employees of the Allstate Insurance Company and the Home Insurance Company. The money was used for the expenses of attending the golf meeting, which included the donation by petitioner of two bottles of liquor for prizes. No evidence was given to explain the business purpose of the outing. Wincapaw's testimony relating the above facts was not corroborated. Respondent disallowed a deduction of $22.78, which petitioner purportedly used to purchase liquor for an impromptu openhouse party in June 1967, when petitioner moved into its new offices. Petitioner introduced no evidence concerning the exact date or the business purpose *146 of the party. Again, no corroboration of Wincapaw's testimony was given. Opinion Issue 1. Bonuses Petitioner contends that the total compensation paid to its four officers for the year in question was reasonable in amount and thus deductible as ordinary and necessary business expenses under section 162 (a)(1). [4] Respondent argues that the total compensation was unreasonable in amount and, alternatively, that, even assuming the amounts were reasonable, the bonuses were nonetheless a disguised distribution of earnings. Respondent's determination is presumed to be correct and petitioner has the burden of proving that it was entitled to a larger deduction than *147 respondent allowed. Botany Mills v. United States, 278 U.S. 282 (1929). What constitutes "a reasonable allowance for salaries or other compensation for personal services actually rendered" within the meaning of section 162(a)(1) is essentially a question of fact, Heil Beauty Supplies v. Commissioner 199 F. 2d 193 (C.A. 8, 1952), affirming a Memorandum Opinion of this Court, to be decided in light of all the relevant facts and circumstances. A salary paid by a closely held corporation to one paid by a closely held corporation to one of its shareholders is deserving of particularly intensive scrutiny lest the corporation be permitted to deduct what are in substance dividends in the guise of salaries or bonuses. Heil Beauty Supplies, supra.The compensation arrangement here in issue does not survive such close examination. The issue of deductibility of salaries is not confined to an inquiry into the reasonableness of the amounts of the salaries. This Court has recognized in the past that purported compensation for services which is reasonable in amount *148 may yet be nondeductible as a camouflaged dividend. That the payments here in controversy may have been in amounts which were reasonable is not dispositive of respondent's primary contention for, even though reasonable, unless such payments were compensation for services and not distributions of earnings, they would not be deductible as compensation for services. 842 Twin City Tile & Marble Co., 6 B.T.A. 1238 (1927), affd. 32 F. 2d 229 (C.A. 8, 1929); Charles McCandless Tile Service v. United States 422 F. 2d 1336 (Ct. Cl. 1970); sec. 1.162-7 (a), Income Tax Regs.; see also Irby Construction Company v. United States, 290 F. 2d 824 (Ct. Cl. 1961); Northlich, Stolley, Inc. v. United States, 368 F. 2d 272 (Ct. Cl. 1966). The test of deductibility of supposed compensation is thus two-pronged, with the reasonableness of the amounts being only one tine. Petitioner has introduced persuasive evidence that the total compensation paid to its officers was reasonable in amount. Even the internal revenue agent who audited petitioner's income tax returns evinced his belief that the total *149 amounts were not unreasonable. However, as we noted above, the question of reasonableness of amount of salaries is inextricably wed to the question of whether the salaries were paid purely for services. If the bonuses in question had actually been paid for services rendered we might be able to find that the total amounts paid by petitioner were reasonable. But we are unable to make that finding. Given the extraordinary coincidence of factors indicating that the bonuses were actually a distribution of earnings, we must hold that the bonuses were in substance a dividend rather than compensation for services. Both petitioner and a comparable independent insurance adjusting firm employed a type of contingent remuneration. However, the other firm's compensation scheme differed significantly from petitioner's in that the contingencies were defined and delimited in advance. Each employee knew the exact percentage of his billings due him and bonuses were purely nominal. However, petitioner's system of bonuses had no such element of predictability. Although petitioner's basic salary and percentage of fee billings arrangements were comparable to the other firm's, its system of bonuses *150 was extremely unstructured. Bonuses were computed periodically throughout the year on no apparent pre-set basis, except perhaps the availability of funds. Of course, a system of calculating bonuses according to the employer's ability to pay would not be compensation "purely for services" within the meaning of the regulations. A compensation arrangement so opentextured as petitioner's lends itself easily to abuse, especially in a close-corporation situation. It should also be noted that each of the other firm's seven offices employed only one manager to do all of the administrative and managerial work. This is an indication that the administrative burden on petitioner's four officers was not overwhelming. Petitioner's consistently negligible taxable income is an indication that the bonus system was based on the funds available rather than on services rendered. For each year bonuses seem to have been used as a mechanism to absorb any excess taxable income. For the year in issue the total remuneration paid to the four officer-shareholders was more than 99.6 percent of taxable income before deductions for officers' salaries. Petitioner's early courtship of subchapter S status and *151 Wincapaw's lack of concern over losing such status are further indications that petitioner's bonus system was geared to available funds rather than services rendered. The object of attaining subchapter S status is, of course, to have all of a corporation's income taxed to its shareholders and none taxed to the corporation. If such a result is petitioner's goal, then it should follow the path prescribed by Congress to reach it, rather than charting its own course and circumventing other provisions of the 1954 Code. The definition of net income in the redemption agreement with Hobson is another factor indicating that the measure of the bonuses was petitioner's ability to pay. Hobson was to receive 35 percent of petitioner's net income for five years in exchange for his 35 percent stock interest. Net income was defined by the agreement as net income before deduction of all bonuses of the type here in question. We construe this as a recognition by both petitioner and Hobson that net income for tax purposes was intended to be nominal in amount, and that for other purposes it had to be redefined. There are also several factors which indicate that not only were the bonuses based on available *152 funds, but that they were also essentially a return on capital rather than compensation for services. Of course, if the bonuses fall prey to either of these shortcomings they are nondeductible. 843 While no single element is conclusive in determining whether alleged compensation was in substance a distribution of earnings, petitioner's history of never having declared a dividend is significant. Prudent businessmen will not long pursue an endeavor which yields no return on invested capital. Charles McCandless Tile Service, supra.The four officer-shareholders in this case contributed both their labor and their capital to the business venture. Absent tax considerations it is very unlikely that the money they derived from the enterprise would be cast as solely from either input. There is no evidence of a need for or a practice of ploughing a susbtantial portion of the earnings back into the business. In fact, quite the contrary was true. If a substantial shareholder in petitioner had not been actively engaged in the business, it is difficult to imagine him foregoing dividends without protest while nearly all of petitioner's income was paid out as salaries and bonuses.
*153 The fact that the bonuses were distributed in exact proportion to the stockholdings of the recipients is also worthy of notice. If the bonuses were to be based on the effort expended or services rendered, then each officer's contingent salary (60 percent of fee billings) would presumably have been a more appropriate gauge of what he deserved. In fact, the bonuses were quite disproportionate to the contingent salaries received by each officer. Hobson asserted that the bonuses had always been computed according to stock ownership, whereas Wincapaw testified that the bonuses were calculated only with reference to the effort and output of each officer. Paying the bonuses in exact ratio to stockholdings belies testimony terming the bonuses based solely on services rendered the corporation. Perhaps the most significant factor indicating that the bonuses were essentially a dividend is that bonuses were paid only to petitioner's officer-shareholders and not to any of its other employees. During the year in issue petitioner employed three insurance adjusters in addition to the four officers. These three performed the same insurance adjusting function as the officers, but had no management *154 responsibilities. One of the three, Gordon Sjol, was employed throughout the year and received no bonus except a paid vacation, which the officers also received. Neither of the other two adjusters nor the two clerical employees received bonuses. A system of paying bonuses only to shareholders smacks of a distribution of profits. Petitioner's witnesses testified that the year in issue was an abnormally busy year and that the bonuses were justifiable compensation for the corporation's added workload. However, everyone employed during these peak periods worked harder and must have deserved additional compensation. Also, if the officer-shareholders were working harder and producing more revenue, then their incomes should have been augmented automatically. Under petitioner's contingent compensation scheme 60 percent of any increased billings would be received by the employee doing the billing. Thus, petitioner had a bonus element already included in its compensation schedule which would recompense the adjusters' added effort. Further, a shareholder should not need bonuses as an incentive to the *155 same extent as a nonshareholder; presumably a shareholder's part ownership and his anticipated return on capital are strong incentives to work assiduously. See University Chevrolet Co. v. Commissioner, 16 T.C. 1452 (1951), affd. 199 F. 2d 629 (C.A. 5, 1952). Petitioner has sought to justify remitting bonuses only to shareholders by reference to the administrative and management duties borne by the officers but not by the others. Hobson testified that the administrative salary was designed to at least partially compensate for the officers' additional responsibilities. Wincapaw stated that the administrative salary had been intended as only nominal compensation for the officers' greater workload and that the bonuses were meant to fully compensate for those added labors. However, Theison was an officer from the first year of the corporation, and he received only an administrative salary as recompense for the additional work required of him. Hobson testified that Theison received approximately the same administrative salary before and after he became a shareholder, but that Theison never received a bonus prior to becoming a shareholder. Petitioner had paid *156 bonuses to its officershareholders during those previous years, but had not paid a bonus to Theison, who was merely an officer. This history contravenes Wincapaw's characterization of the officers' administrative salaries as nominal; they were sufficient for Theison until he became a shareholder. The above factors and the record in its entirety combine to convince us that the $13,000 in bonuses for the year in issue were 844 paid according to stock ownership and availability of funds rather than for services rendered. Thus the bonuses are not deductible under section 162(a)(1). Issue 2. Entertainment and Gifts Petitioner contends that the entertainment and gift items comprising the $421 deduction disallowed by respondent are deductible as ordinary and necessary business expenses under section 162, and that adequate substantiation has been adduced to meet the requirements of section 274(d). Respondent argues to the contrary on each point. Petitioner has a threefold test to satisfy before it can deduct the entertainment and gift expenses here in question. First, it must establish *157 that the expenditures were ordinary and necessary business expenses within the meaning of section 162. Sec. 1.274-1, Income Tax Regs. Second, petitioner must meet the requirements of sections 274(a)(1) (A) or 274(b). Section 274(a)(1)(A) prescribes, with exceptions set forth in section 274(e), that expenses relating to entertainment activities must be "directly related to, or * * * associated with, the active conduct of the taxpayer's trade or business" before a deduction will be warranted. Section 274(b) places limits on the costs and types of gifts which can be deducted. A third set of requirements is embodied in section 274(d), which, together with the accompanying regulations, sets forth detailed substantiation rules for entertainment, gift, and travel expenditures. With respect to the $131.50 deduction claimed by petitioner for the cost of purchasing liquor from Galloway, we hold that section 274 does not apply. The various provisions of section 274 apply only to entertainment, travel, and gift expenditures. The claimed expense fits into none of these categories. Rather, this was merely a service provided by petitioner for the benefit of its employees. *158 Nor-Cal bought liquor and nuts at a discount from Galloway. It then used the liquor and nuts in lieu of cash to reimburse the employees for their business expenses. This service provided to petitioner's employees cannot be construed as an entertainment, travel or gift expense. Amounts actually expended to provide such a service would be a fringe benefit qualifying as an ordinary and necessary business expense under section 162. However, we find that petitioner has not met its burden of proving that all of this $131.50 expense item was incurred for the purpose designated. With section 274(d) inapplicable we must fall back on the rule set forth in Cohan v. Commissioner, 39 F. 2d 540 (C.A. 2, 1930). Petitioner introduced Hobson's expense book for December 1966, to document $42.85 of the $131.50. The total of the expenses to be reimbursed to Hobson had been reduced by $42.85, with a notation that the reason for the reduction was the receipt by Hobson of liquor and nuts valued at $42.85. We feel that this amount was adequately established. Petitioner adduced the testimony of Wetterer to show payment of another portion of the $131.50. Upon consideration of his testimony *159 we find that petitioner has proven another $20 to have been expended as alleged. Petitioner introduced no evidence of any specificity whatsoever with regard to the remainder of the $131.50. We find, therefore, that petitioner has established only $62.85 of the $131.50 as an ordinary and necessary business expense. The remainder is nondeductible. The other expenses here in issue clearly fall within the ambit of section 274. Thus, as we mentioned above, petitioner must run the gauntlet of sections 162, 274(a)(1)(A) or 274(b), and 274(d). We are convinced from all of the evidence that petitioner has failed to meet the substantiation requirements of section 274(d) with respect to all of these other expenditures. Since failure to comply with section 274(d) results in the complete disallowance of the deduction, section 1.274-5(a), Income Tax Regs., our finding on that issue obviates resolution of the other issues. Section 274(d)[5] and the accompanying regulations impose stringent standards for taxpayers to meet in substantiating their entertainment, travel, and *160 gift expenses. 845 These regulations have been consistently upheld by this Court. See, e. g., Williamf. Sanford, 50 T.C. 823 (1968), affd. 412 F. 2d 201 (C.A. 2, 1969), certiorari denied 396 U.S. 841 (1969). Section 274 places a burden on the taxpayer to substantiate by adequate records, or by sufficient evidence corroborating his own statement, each of the following elements of proof: (1) the amount of the expense; (2) the time and place of the entertainment expenditure or the date and description of the gift; (3) the business purpose of the expense; and (4) the business relationship to the taxpayer of the person entertained or receiving the gift. Petitioner must substantiate each of these elements. Sec. 1.274-5(c)(1), Income Tax Regs.
*161 As our findings of fact clearly indicate, petitioner has failed to show the existence of one or more of these elements with respect to each of the items remaining in issue. The uncorroborated self-serving testimony of a petitioner is inadequate to meet the substantiation requirements of section 274(d). Walter L. Woodward, 50 T.C. 982-983 (1968), Delores Bussabarger, 52 T.C. 819, 828-829 (1969). Respondent correctly disallowed a deduction for these items. Decision will be entered under Rule 50. Footnotes
1. Unless otherwise specified all statutoryreferences are to the Internal Revenue Code of 1954.↩
2. There was conflicting evidence introduced concerning the amounts of the administrative salaries. We feel that Wincapaw's testimony on cross-examination was the most informed and the most reliable, and we find accordingly.↩
3. Wincapaw recalled the views he expressed in that conversation as follows: That it was my understanding that as long as the total renumeration [sic] that the individuals received was not excessive, that we had poetic license, so to speak, to compensate these individuals as long as there was reasonable reason to do so and that anything above and beyond that, we could not pay out in that form and would have to go out in the form of stock dividends. Shell recounted the following version of that conversation: Q. Did you ask him if he was upset by the fact that he lost * * * Sub-chapter S status. A. Yes, I did. Q. What did he reply to that? A. This is when he indicated that * * * "it really doesn't make too much difference, because we can accomplish the same purpose as Subchapter S by taking out all of the income and not having taxable income." Q. Or paying it out as bonuses? A. Right. * * *↩
4. SEC. 162. TRADE OR BUSINESS EXPENSES. (a) In General. - There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including - (1) a reasonable allowance for salaries or other compensation for personal services actually rendered;↩
5. SEC. 274(d). Substantiation Required. - No deduction shall be allowed - * * * (2) for any item with respect to an activity which is of a type generally considered to constitute entertainment, * * * or (3) for any expense for gifts, unless the taxpayer substantiates by adequate records or by sufficient evidence corroborating his own statement (A) the amount of such expense or other item, (B) the time and place of the travel, entertainment, * * * or the date and description of the gift, (C) the business purpose of the expense or other item, and (D) the business relationship to the taxpayer of persons entertained * * * or receiving the gift. * * *↩